FILED IN OPEN COURT
ON 12/19/18 NB
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CR-00505-1FL(1)

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | **I N D I C T M E N T** |
| ) | |
| JACKLINE NAOMI WANJIRU IRUNGU  ) | |
| ) | |

## General Allegations

At all times relevant to this Indictment:

1. The Immigration and Nationality Act (INA) governs the immigration laws of the United States.

2. Pursuant to the INA, foreign-born nationals are not permitted to permanently reside in the United States unless they were lawful permanent residents.

3. Under the INA, a foreign-born national who is married to a United States citizen can obtain lawful permanent resident status in the United States if the marriage was entered into in good faith; and the United States citizen did not enter into the marriage in exchange for something of value, such as money; and the United States citizen did not enter into the marriage for the purpose of enabling the foreign national to obtain legal permanent resident status in the United States.

1

4. The United States Citizenship and Immigration Services (USCIS) is an agency of the United States Department of Homeland Security and is charged with processing applications for immigration benefits such as lawful permanent residence.

5. In order for a foreign-born national to obtain permanent resident status on the basis of marriage to a United States citizen, the United States citizen spouse is required to file a Petition for Alien Relative (Form I-130) on behalf of the foreign-born national. In the Form I-130, the spouse is required to certify that he is in fact a United States citizen, to provide certain background information about the marriage and to certify that the marriage was not entered into for purposes of evading immigration laws. Additionally, certain supporting documentation is also required to be submitted contemporaneously with the Form I-130, to include, but not limited to, a copy of the marriage certificate.

6. A foreign-born national who is seeking to become a lawful permanent resident of the United States on the basis of marriage to a United States citizen is required to complete and submit to the USCIS an Application to Register Permanent Residence or Adjust Status (Form I-485). The foreign-born national is required to sign the Form I-485 certifying, under penalty of perjury, that the information provided by the foreign-born national, including information about the foreign-born national's spouse, is true and

correct and that the foreign-born national is admissible to the United States pursuant to the INA.

7. Upon receipt of Form I-130 and Form I-485, the USCIS begins an official proceeding to determine whether to grant the petition.

8. As part of the official proceeding, the USCIS conducts interviews with the foreign-born national and the United States citizen spouse in order to determine the validity of the claimed marriage.

10. The defendant, JACKLINE NAOMI WANJIRU IRUNGU, was a foreign-born national and citizen of Kenya.

11. Individual C.M.B. was a United States citizen and a member of the United States military.

### COUNT ONE

Paragraphs 1-11 of the General Allegations section above are incorporated and re-alleged herein by reference.

Beginning in or around January of 2014, and continuing through on or about around March of 2016, in the Eastern District of North Carolina and elsewhere, the defendant, JACKLINE NAOMI WANJIRU IRUNGU, did knowingly and willfully combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury to commit certain offenses against the United States, that is, to knowingly enter into a marriage for the purpose of evading provisions of the immigration laws, namely Title 8, United

3

States Code, Sections 1154 and 1186a, which provisions restrict the availability of lawful permanent status, applied for on the basis of marriage to a United States citizen to those foreign-born nationals who have entered into the marriage in good faith, not in exchange for something of value, and not for the purpose of procuring the foreign-born national's admission as an immigrant, in violation of Title 8, United States Code, Section 1325(c).

## PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for defendant IRUNGU, along with others known and unknown to the Grand Jury, to induce a United States citizen to enter into a sham marriage with a foreign-born national for the purpose of evading United States immigration laws and obtaining lawful permanent residence status for an otherwise inadmissible foreign-born national.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which defendant IRUNGU and her co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

A co-conspirator induced Individual C.M.B. to enter into a fraudulent marriage with defendant IRUNGU. The purpose of the marriage was to fraudulently qualify defendant IRUNGU for immigration benefits, including lawful permanent residence status in the United States.

4

It was further part of the conspiracy that defendant IRUNGU would prepare and submit immigration applications and supporting documentation on behalf of herself and Individual C.M.B. to the USCIS knowing the marriage was fraudulent and entered into to evade provisions of the immigration laws.

It was further part of the conspiracy that Individual C.M.B, once married to defendant IRUNGU, would apply for and receive Basic Allowance for Housing (BAH) from the United States military, benefits that Individual C.M.B. would not normally be entitled to without being married.

## OVERT ACTS

In furtherance of the conspiracy and in order to accomplish the purpose and object thereof, defendant IRUNGU and her co-conspirators did commit, and cause to commit, among others, at least one of the following overt acts:

1. In or about early 2014, a co-conspirator, employed as a supervisor by the United States military, told Individual C.M.B., that he needed someone to assist one of his friends (later identified as defendant IRUNGU) to obtain a visa.

2. In or about June of 2014, while the co-conspirator and Individual C.M.B. were deployed to Kuwait, the co-conspirator asked Individual C.M.B. to marry defendant IRUNGU in order for her to obtain a visa, and that as a benefit Individual C.M.B. could also receive BAH. The co-conspirator told Individual C.M.B. that

he would not have to live with defendant IRUNGU once they became married.

3. Sometime later in or about 2014, the co-conspirator again asked Individual C.M.B to marry defendant IRUNGU at which time Individual C.M.B. agreed.

4. Once Individual C.M.B. told the co-conspirator that he agreed to marry defendant IRUNGU, defendant IRUNGU and Individual C.M.B. initiated communication through social media at the co-conspirator's direction.

5. While in Kuwait, Individual C.M.B. and defendant IRUNGU communicated regularly discussing the process that the co-conspirator had directed them to follow such as getting married, staging photographs of the wedding, and completing immigration paperwork.

6. In or around February 2015, Individual C.M.B arrived to Fort Bragg, North Carolina, and shortly thereafter arranged a meeting between himself and defendant IRUNGU in Fayetteville, North Carolina. During this meeting defendant IRUNGU told Individual C.M.B. that her current immigration documents were expiring soon.

7. On or about March 2, 2015, Individual C.M.B. and defendant IRUNGU participated in a civil marriage ceremony and got married in Cumberland County, North Carolina. The marriage

ceremony was attended and witnessed by other individuals known and unknown to the Grand Jury.

8. On or about March 2, 2015, defendant IRUNGU directed Individual C.M.B., and the two individuals known and unknown to the Grand Jury, to stage photographs for the purpose of submitting them in support of immigration applications.

9. Approximately one week after the wedding, Individual C.M.B. applied for BAH at the Fort Bragg finance office.

10. In or around May of 2015, defendant IRUNGU provided Individual C.M.B. prefilled immigration paperwork with instructions to print, sign, and send back to defendant IRUNGU.

11. On or about June 2, 2015, Individual C.M.B executed Form I-130 on behalf of defendant IRUNGU.

12. On or about June 6, 2015, defendant IRUNGU filed Forms I-485 and I-130 with USCIS.

13. After the submission of Forms I-130 and I-485, the co-conspirator contacted Individual C.M.B. and arranged for Individual C.M.B. to meet with defendant IRUNGU at the co-conspirator's apartment. The purpose of the meeting was to rehearse answers to anticipated questions that would be asked by USCIS at the marriage interview.

14. On March 10, 2016, Individual C.M.B and defendant IRUNGU traveled to the USCIS office in Durham, North Carolina, for a marriage interview. Based on separate interviews and substantial

inconsistencies, USCIS examiners referred the matter for fraud investigation.

15. On or about March 29, 2016, Individual C.M.B. stated to immigration officials he married defendant IRUNGU to help her become a citizen of the United States in exchange of BAH. Individual C.M.B. stated "[i]t was a contract marriage."

All in violation of Title 18, United States Code, Section 371.

### COUNT TWO

Paragraphs 1-11 of the General Allegations section above are incorporated and re-alleged herein by reference.

On or about March 2, 2015, in the Eastern District of North Carolina and elsewhere, the defendant, JACKLINE NAOMI WANJIRU IRUNGU, a citizen of Kenya and therefore an alien in the United States, did knowingly and unlawfully enter into a marriage for the purpose of evading a provision of the immigration laws of the United States.

All in violation of Title 8, United States Code, Section 1325(c).

### COUNT THREE

Paragraphs 1-11 of the General Allegations section above are incorporated and re-alleged herein by reference.

On or about June 2, 2015, in the Eastern District of North Carolina and elsewhere, the defendant, JACKLINE NAOMI WANJIRU

IRUNGU, did aid and abet Individual C.M.B. to knowingly make a false statement under oath in a case, proceeding, and matter relating to, and under, and by virtue of any law of the United States relating to naturalization, citizenship, and registry of aliens, that is, defendant IRUNGU completed and provided Individual C.M.B. a Form I-130 for his certification claiming falsely that defendant IRUNGU and Individual C.M.B. were married in good faith, when in fact, as she then and there knew, defendant IRUNGU had knowingly and unlawfully entered into the marriage with Individual C.M.B. for the purpose of evading a provision of the immigration laws of the United States.

All in violation of Title 18, United States Code, Sections 1015(a) and 2.

## COUNT FOUR

Paragraphs 1-11 of the General Allegations section above are incorporated and re-alleged herein by reference.

On or about June 2, 2015, in the Eastern District of North Carolina and elsewhere, the defendant, JACKLINE NAOMI WANJIRU IRUNGU, did aid and abet Individual C.M.B. to knowingly make under oath, and to knowingly subscribe as true under penalty of perjury pursuant to Title 28, United States Code, Section 1746, a false statement with respect to a material fact in an application required by the immigration laws and regulations prescribed thereunder, that is, defendant IRUNGU completed and provided

9

Individual C.M.B. a Form I-130 for his certification claiming falsely that defendant IRUNGU and Individual C.M.B. were married in good faith, when in fact, as she then and there knew, defendant IRUNGU had knowingly and unlawfully entered into the marriage with Individual C.M.B. for the purpose of evading a provision of the immigration laws of the United States.

All in violation of Title 18, United States Code, Sections 1546(a) and 2.

REDACTED VERSION
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

FOREPERSON

DATE 12/18/18

ROBERT J. HIGDON, JR.
United States Attorney

BY: SEBASTIAN KIELMANOVICH
Assistant United States Attorney